ORAL ARGUMENT NOT YET SCHEDULED

No. 24-5186

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

NOVARTIS PHARMACEUTICALS CORPORATION,
*Plaintiff-Appellant*,

v.

XAVIER BECERRA, SECRETARY OF HEALTH AND HUMAN SERVICES, *et al.*,
*Defendants-Appellees,*
and

MSN PHARMACEUTICALS INC., *et al.*,
*Intervenor-Appellees.*

On Appeal from the United States District Court
for the District of Columbia, No. 24-cv-02234
Before the Honorable Dabney L. Friedrich

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR
ADMINISTRATIVE STAY AND STAY PENDING APPEAL**

CATHERINE E. STETSON
SUSAN M. COOK
MARLAN GOLDEN
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Novartis Pharmaceuticals Corporation*

August 18, 2024

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| GLOSSARY | iv |
| INTRODUCTION | 1 |
| ARGUMENT | 3 |
| I. NOVARTIS WILL SUFFER IRREPARABLE HARM | 3 |
| II. NOVARTIS IS LIKELY TO PREVAIL ON THE MERITS | 8 |
| III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT A STAY | 11 |
| CONCLUSION | 11 |
| CERTIFICATE OF COMPLIANCE | |
| CERTIFICATE OF SERVICE | |

# TABLE OF AUTHORITIES

**Page**

**Cases:**

*American Bioscience, Inc. v. Thompson*,
    243 F.3d 579 (D.C. Cir. 2001) ......................................................................... 8

*Bayer HealthCare, LLC v. FDA*,
    942 F. Supp. 2d 17 (D.D.C. 2013) .................................................................... 4

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996) .......................................................................... 7

*Bristol-Myers Squibb Co. v. Shalala*,
    91 F.3d 1493 (D.C. Cir. 1996) ......................................................................... 9

*Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*,
    566 U.S. 399 (2012) .......................................................................................... 9

*ConverDyn v. Moniz*,
    68 F. Supp. 3d 34 (D.D.C. 2014) ..................................................................... 7

*Department of Homeland Sec. v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) ................................................................................... 11

*Endo Par Innovation Co., LLC v. Becerra*,
    No. 24-cv-999 (TJK), 2024 WL 2988904 (D.D.C. June 10, 2024) ................ 5

*Hill Dermaceuticals, Inc. v. FDA*,
    826 F. Supp. 2d 252 (D.D.C. 2011) ................................................................ 8

*League of Women Voters of United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ........................................................................... 11

*Mylan Lab'ys Ltd. v. FDA*,
    910 F. Supp. 2d. 299 (D.D.C. 2012) ............................................................... 4

*National Min. Ass'n v. U.S. Army Corps of Engrs*,
    145 F.3d 1399 (D.C. Cir. 1998) ...................................................................... 5

*Shawnee Tribe v. Mnuchin*,
    984 F.3d 94 (D.C. Cir. 2021) ......................................................................... 11

*International Trade Comm'n v. ASAT, Inc.*,
    411 F.3d 245 (D.C. Cir. 2005) ...................................................................... 10

*Xiaomi Corp. v. Department of Def.*,
    No. 21-CV-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021) ................. 4

# TABLE OF AUTHORITIES—CONTINUED

**Page**

**Statutes:**

21 U.S.C. § 355(d) .................................................................................5
21 U.S.C. § 355(j)(2)(v) ......................................................................1, 8

**Rules and Regulations:**

21 C.F.R. § 314.94(a)(8)(iv) ........................................................1, 6, 8, 10
21 C.F.R. § 314.127(a)(7) ........................................................................6
54 Fed. Reg. 28,872 (1989) ...................................................................9

# GLOSSARY

ANDA  Abbreviated New Drug Application

FDA  Food and Drug Administration

FDCA  Food, Drug, and Cosmetic Act

MSN  MSN Pharmaceuticals

**INTRODUCTION**

This case asks whether the Food and Drug Administration's governing statutory and regulatory "same-labeling" requirements mean what they say—and whether Novartis will be irretrievably harmed if a purported generic drug referencing Novartis's best-selling drug product launches on the back of unlawful agency action flouting those same-labeling requirements. The answer to both questions is yes.

The Federal Food, Drug, and Cosmetic Act (FDCA) provides that a generic drug (and its labeling) must be "the same as" the brand-name drug its Abbreviated New Drug Application (ANDA) references. 21 U.S.C. § 355(j)(2)(v). FDA regulations expand on this statutory directive, permitting generic labeling to differ from that of the reference product when the generic drug is produced by a "different manufacturer[]." 21 C.F.R. § 314.94(a)(8)(iv). Because the brand-name product may retain exclusivity or patent rights to some approved indications or conditions of use, FDA's regulations provide that generic labeling may be approved with an "omission of an indication or other aspect of labeling protected by patent or accorded exclusivity." *Id.*

FDA did not approve any such labeling here, though. It approved MSN Pharmaceuticals Inc. (MSN)'s application to market a generic product with labeling that differs from Novartis's ENTRESTO only by *rewriting* the labeling that

physicians and patients follow for treatment guidance. FDA thus has cleared the path for MSN to launch a product that does not have the same labeling as ENTRESTO. That is unlawful. The agency must hew to the text of its governing statute and regulations; that is the law. It is not a "a word game." Gov't Opp. 17.

This particular agency error also lays bare the real-world consequences of dismissing the law's same-labeling mandate as a mere "technical regulatory requirement" implicating "stylistic wording choices." Gov't Opp. 17, 22. MSN's labeling lacks critical safety instructions that FDA itself found result in fewer clinically relevant adverse events for a vulnerable patient group. That direct impact on patient safety is not a "word game," either.

Novartis will be harmed immediately by MSN's launch, and that harm will be impossible to remedy after its generic products have taken their place on the pharmacy shelves. To its credit, the District Court committed to resolving the merits in sixty days, but sixty days is an eon in the fast-moving world of generic drugs; market shifts cannot simply be undone. Even by the time the District Court renders its expedited decision on the merits, MSN—and other likely generic entrants—will have elbowed out ENTRESTO and made it impossible for Novartis to ever recapture its current market. To conclude otherwise requires disregarding not only Novartis's sworn attestations, but also well-documented evidence of drug market dynamics and

2

ample precedent setting out that irreparable harm may visit litigants large and small alike.

Novartis requests a stay pending appeal by 6PM on **August 19, 2024**, or alternatively an interim administrative stay should the Court require more time to render its decision.[1]

## ARGUMENT

**I. NOVARTIS WILL SUFFER IRREPARABLE HARM.**

Novartis's case for irreparable harm is straightforward, and it is consistent with the irreparable injury cases finding similarly situated movants entitled to preliminary relief. *See* Mot. 10–11. The District Court's contrary conclusion rested on several errors, which FDA and MSN largely repeat on appeal.

**A.** First, market position and erosion. Neither FDA nor MSN contest the basic precept that Novartis has explained: Because patient preferences and prescribing practices shift quickly in the face of generic entry, Novartis would suffer an immediate and unrecoverable loss of ENTRESTO's leading position even if the MSN product's approval is later enjoined. Miller Decl. ¶¶ 38, 39. Novartis will also see reduced sales within weeks of generic entry, and the value of its product will be permanently eroded even if MSN's product is later withdrawn. Miller Decl. ¶¶ 26–

---

[1] The Federal Circuit's orders precluding MSN from launching until at least Monday, August 19 remain in effect.

28; Gov't Opp. 2 (effect of agency action includes "reduced prices for the duration of the litigation").

The Government dismisses these harms as purely "financial injury" in the spare three pages it devotes to irreparable harm, Gov't Opp 20–22, and MSN downplays how quickly Novartis will be harmed, MSN Opp. 9–11—but no party contests the core of Novartis's arguments. Nor could they: As many decisions in this circuit have recognized, diminished market position and eroded value constitute irreparable harm. *Bayer HealthCare, LLC v. FDA*, 942 F. Supp. 2d 17, 26 (D.D.C. 2013) (collecting cases); *Xiaomi Corp. v. Department of Def.*, No. 21-cv-280 (RC), 2021 WL 950144, at *11 (D.D.C. Mar. 12, 2021) (same).[2]

FDA does not defend the District Court's erroneous conclusion that "MSN's drug is the *only* generic sacubitril/valsartan currently positioned to enter the market." A11. For its part, MSN tacitly acknowledges that the conclusion is wrong, explaining to this Court that other generic "companies are likely preparing for an accelerated launch (triggered by an MSN launch at-risk) at this very moment." MSN Opp. 24. Novartis agrees, and the point only underscores the "extreme hardship" that Novartis will suffer if FDA's unlawful action takes effect. *Mylan Lab'ys Ltd.*

---

[2] Citing to a large company's public statements discussing its finances again confuses the financial health of a going concern with the applicable irreparable-harm standard. MSN Opp. 11.

4

*v. FDA*, 910 F. Supp. 2d. 299, 313 (D.D.C. 2012) (great business injury, even if framed in financial terms, is irreparable).[3] And unlike in commercial litigation between two private parties, sovereign immunity means that Novartis's quantum of harm is necessarily unrecoverable in an Administrative Procedure Act challenge against a federal agency. *National Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998).

**B.** Second, upon the launch of the MSN product, Novartis faces a substantial risk of confusion and mistaken attribution of adverse events and other side effects to ENTRESTO. That risk is not just some generalized complaint about the bona fides of a generic versus an innovator drug; it is specific and non-speculative. FDA agreed to include in ENTRESTO's labeling a modified dosing regimen that it found necessary to ensure the product's safety and efficacy. A155; 21 U.S.C. § 355(d). FDA backtracked on its own clinical judgment when approving the MSN product's labeling, which conspicuously does not include the same critical safety instructions the agency found necessary for ENTRESTO. A519–520. As a result, healthcare providers now must make more decisions with less information.

---

[3] This reality also means that, just like the manufacturer that obtained emergency relief in *Endo Par Innovation Co., LLC v. Becerra*, No. 24-cv-999 (TJK), 2024 WL 2988904 (D.D.C. June 10, 2024), Novartis will be harmed by multiple generic entrants in the near future—not just one, as the District Court surmised. *See* A10–A11.

As the Government now sees things, FDA added the modified dosing regimen to ENTRESTO's labeling largely on a whim; "it thought that the inclusion of the dosing regimen in the labeling *did not render the drug unsafe*." Gov't Opp. 19 (emphasis added). But that was not FDA's position when it developed and approved ENTRESTO's label. FDA added the modified dosing information because, for a vulnerable subpopulation of patients, a slower up-titration to the recommended dose *resulted in fewer adverse events*. A155.

Under FDA's own regulations, the question it must ask and answer when carving out the modified dosing regimen it approved "from a safety perspective," A155, then, is whether omitting the dosing regimen renders the drug "*less safe*." 21 C.F.R. § 314.127(a)(7); *id.* § 314.94(a)(8)(iv) (emphasis added). FDA did not answer that question. Instead it opined that the modified dosing information may not be sufficient to produce "the safest and best-tolerated option for such patients." A494; *see* Gov't Opp. 20. But that is not the standard. FDA added the dosing language to ENTRESTO's label because it made the product *safer* in some circumstances; there would be no other reason to approve it. By definition, then, omitting the language makes the generic *less safe*. That is the end of the inquiry.

It does not take any feat of imagination to foresee that *without* the same critical safety instructions that FDA deemed necessary for ENTRESTO, adverse events will increase and will be unfairly attributed to Novartis—particularly as many patients

6

treated with a generic product will be completely unaware that they have been switched away from ENTRESTO in the first place. Miller Decl. ¶ 39.

**C.** Novartis also will be forced to curtail research and development programs if FDA's unlawful approval of the MSN product is not stayed pending a decision on the merits. In casting this harm as merely speculative, the Government and MSN overlook Novartis's sworn declaration establishing the company *will have no choice* but to roll back investment in developing life-saving and life-sustaining drug therapies. Miller Decl. ¶¶ 6, 37 (ENTRESTO revenues fund ongoing and new research and development programs); *id.* ¶ 10 (losses would "cause significant, irreparable harm to Novartis's ability to . . . fund research and development efforts with respect to new drug products"); *id.* ¶ 29 (changes to operations would impact "research and development roles"); *id.* ¶ 32 (research and development funds for Novartis's 100+ clinical-stage pipeline products would be affected by generic entry).

The hit to Novartis's research and development activities is not mere economic loss, *see* Gov't Opp. 22, MSN Opp. 13. It is a specific and irremediable harm—both to Novartis and to the public interest—sufficient to support preliminary injunctive relief. *See, e.g.*, *Bayer HealthCare*, 942 F. Supp. 2d at 26 (citing *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996)). *See also ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 49 (D.D.C. 2014) (recognizing earlier cases finding that "loss of research and development funding" constitutes irreparable

harm); *Hill Dermaceuticals, Inc. v. FDA*, 826 F. Supp. 2d 252, 261 (D.D.C. 2011), *aff'd* 709 F.3d 44 (D.C. Cir. 2013) (identifying loss of "costs of research and development" as a "substantial harm").

## II. NOVARTIS IS LIKELY TO PREVAIL ON THE MERITS.

Novartis is likely to succeed on the merits for the reasons explained in its motion. The Government's broadside that Novartis "fundamentally misunderstands the record and the statutory and regulatory scheme," Gov't Opp. 15, however, warrants a brief reply.

**A.** FDA has not even produced the administrative record in this case. So the ten pages of analysis the District Court credited on the modified dosing regimen issue, A13, cannot fully reveal "the basis on which the FDA acted," *American Bioscience, Inc. v. Thompson*, 243 F.3d 579, 581–582 (D.C. Cir. 2001). That the record has yet to be produced favors maintaining the status quo pending a decision on the merits, not upending it in favor of MSN's hasty product launch. MSN Opp. 22.

**B.** On the statutory scheme, the statute requires a generic drug and its labeling to be "the same as" the brand-name drug that its ANDA references. 21 U.S.C. § 355(j)(2)(v). FDA granted itself a narrow exemption to approve labeling for products marketed by "different manufacturers," 21 C.F.R. § 314.94(a)(8)(iv). But even assuming that muscular reading of the statute is still appropriate in a post-

*Chevron* world, that authority does not give FDA license to read the same-labeling requirement out of the law entirely. From the beginning, FDA "emphasize[d] that the exceptions to the requirement that a generic drug's labeling be the same as that of the listed drug are limited." 54 Fed. Reg. 28,872, 28,884 (Jul. 10, 1989).

Precedent does not help the Government on the same-labeling point either. FDA's invocation of *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk, A/S*, 566 U.S. 399 (2012), proves a critical point: A generic manufacturer may either "file a so-called paragraph IV certification" challenging the validity or infringement of patents covering the brand-name drug—or it may "submit a so-called section viii statement," where generic company may "market the drug for one or more methods of use not covered by the brand's patents." *Id.* at 406–407. *Caraco* explains that the availability of that latter pathway—the one MSN chose—turns on the FDA-approved labeling of the brand-name product. *See id.* at 407. Underscoring this point, ENTRESTO's current labeling is *FDA's* brainchild. Novartis sought approval for different labeling, and it was FDA that required the current ENTRESTO labeling.

Even more curious is FDA's treatment of *Bristol-Myers Squibb Co. v. Shalala*, 91 F.3d 1493 (D.C. Cir. 1996). FDA claims that "Novartis does not mention that decision," Gov't Opp. 16, but Novartis did indeed cite that opinion, Mot. 19. Setting aside the *Chevron*-driven structure of the decision, *see Bristol-Myers Squibb* at 1500 (endorsing "the Secretary's interpretation of the Act" and

9

finding "unusually strong support in the legislative history"), that decision in all events does not answer the question this case asks: whether FDA may line-edit *within* an indication or other aspect of labeling protected by patent, rather than simply *remove* one of several indications in its entirety from generic labeling. Under a plain reading of the statute—pre- or post-*Loper Bright*—the answer is no.

**C.** FDA's regulations allow the "omission of an indication or other aspect of labeling protected by patent" to address a marketing exclusivity or patent right. 21 C.F.R. § 314.94(a)(8)(iv). Those regulations do not permit a rewriting of the reference product's current approved indication. "Omission" does not mean "addition": Removing something is not the same as adding it. The Government is evidently concerned that FDA would be unduly restricted if it were to interpret "omission" to mean "deleting words rather than [] adding them." Gov't Opp. 17. But FDA has bound itself to that regulation and must either apply it as written or promulgate a new rule. *U.S. International Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005) ("The Commission is bound by its regulations.").

**D.** The undercurrent running throughout the Government's argument on the merits is that in pressing the law's same-labeling requirements, Novartis is engaging in needless formalism. But FDA regulations require that labeling be the same for a reason, and MSN's label here is not the same as ENTRESTO's. If there is any part of the federal government, moreover, that should be expected to abide by the

"technical regulatory requirements" and "wording choices" dictated by federal law, Gov't Opp. 17, 22, it is the Food and Drug Administration. *See Department of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909 (2020) ("[P]articularly when so much is at stake," "the Government should turn square corners in dealing with the people.") (internal quotation marks and citation omitted).

## III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT A STAY.

An interim order staying FDA's approval results in no harm to FDA. Federal agencies have "no public interest" in enforcing unlawful administrative action. *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102–103 (D.C. Cir. 2021) (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016), and reversing denial of motion for preliminary injunction and remanding with instructions "to enter a preliminary injunction promptly"). The Government's and MSN's generalized interest in bringing generic products to market does not override the specific harms to Novartis. Neither does it outweigh the strong public interest in ensuring that FDA-approved generic products, particularly those about to enter the market for the first time, do not cause known and avoidable adverse events in patients.

## CONCLUSION

For these reasons, and those set out in Novartis's motion, the Court should grant Novartis's emergency motion for a stay pending appeal. Alternatively, the

Court should enter an administrative stay if it is not prepared to rule by **6PM on Monday, August 19**.

Respectfully submitted,

*/s/ Catherine E. Stetson*
CATHERINE E. STETSON
SUSAN M. COOK
MARLAN GOLDEN
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5491
Facsimile: (202) 637-5910
cate.stetson@hoganlovells.com

Dated: August 18, 2024    *Attorneys for Novartis Pharmaceuticals Corporation*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2).

1. Exclusive of the exempted portions of the document, as provided in Fed. R. App. P. 32(f), this document contains 2,594 words.

2. The document has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

August 18, 2024

/s/ Catherine E. Stetson
Catherine E. Stetson

## CERTIFICATE OF SERVICE

I certify that on August 18, 2024, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Catherine E. Stetson
Catherine E. Stetson